

FILED by _____ D.C.

APR 3 0 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

# UNITED STATES DISTRICT COURT

## Southern District of Florida

## Case Number: 11-cv-22489-DLG

_____

Pascal A. Stroud

_____

     Plaintiff(s)

V.

Bank of America:

_____

     Defendant(s)

## PLAINTIFF PASCAL A. STROUD OPPOSITION TO CACH, LLC MEMORANDUM OF LAW IN SUPPORT OF  MOTION FOR SUMMARY JUDGMENT

COME NOW, Plaintiff Pascal A. Stroud oppose summary judgment on all claims

asserted by CACH, LLC (the Defendant) against Pascal A. Stroud (the Plaintiff Pro se).

### INTRODUCTION

Plaintiff's claims against Defendant are true and can be shown by the evidence that follow and by the applicable FCRA et al statutes. First the evidence will show the Defendant is more than willing to use false and unsubstantiated documents in the form of affidavits, Bill of Sales and the use of fraudulent Bank of America (hereafter "BOA or the bank") account statements and a illegible and fraudulent BOA card member agreement. Defendant's voluntary dismissal is not due to good will or good faith but because it filed a meritless lawsuit and didn't get away with it. Defendant is guilty of lack of candor to the Court, fraud on the court and unclean hands as well abuse of process. Defendant's allegations fail for the following reasons (1) there is no such dispute under the FCRA el at., as to an "E-Oscar" disputes. Defendant does not have a written policy[1] to investigate consumer dispute. Defendant's furnishing of inaccurate information to Equifax and Trans Union is in violation of FCRA § 1681s-2.

## STATEMENT OF UNDISPUTED FACTS

1. On Plaintiff's Trans Union[2] credit report dated January 6, 2010 it shows Defendant is referred to by BOA as another lender which is a misrepresentation as Defendant has stated that it is a passive debt purchaser and nothing else. Defendant also states in this report that the original creditor is BOA this is inaccurate as the bank has admitted that it was not the original lender or originator[3] of the account.

2. Defendant has not provided any evidence to show it to be a real party in interest of this account when it file its Complaint[4]  as Defendant has failed to submit a legal assignment of debt then[5] as well as now[6] of any material evidence to establish it is

---

[1] See Exhibit P-1 STD-1098 response #4
[2] See Exhibit P-19 STD- 64a
[3] See Exhibit P-3 STD 227a
[4] See Exhibit P-8 STD 174 #3
[5] See EX. P-10 STD- 202 #1,  STD 205 #1
[6] See EX. P-? Plaintiff's STD- 811

entitled to summary judgment[7]. In the DNS case though not held in Florida has similar requirements to notify a debtor of the assignment as do *Florida Statute 559.715* that states that the defendant is to produce to the debtor [Plaintiff] an assignment of debt no later than thirty days of receiving it and that the assignee must be a real party. *See Gigli v. Palisades Collection, L.L.C.* see also *CENTRAL OHIO CREDIT CORP.*[8] were the court states:

> The Court has reviewed the circuit court case of UMIJC VP. V. Levine, 10 Fla. L. Weekly Supp. 3236 (Circuit Court, 15th Judicial Circuit,2003), and has also received Plaintiff's Affidavit As to Indebtness, wherein Plaintiff's Affidavit testified Plaintiff had received this debt through a series of assignments. The Court finds Section 559.715 Florida Statutes, is a good condition precedent and applies to those entities receiving assignment of consumer debts and, having failed by providing notice to Defendant within 30 days after assignment, Plaintiff is precluded as a matter of law from bringing this action. There are no genuine issues of material fact and Defendant KELVIN LAMAR JONES is entitled to judgment in his favor and against Plaintiff...

3.  The only thing that the defendant had initially provided was a dunning letter[9] it sent to Plaintiff dated October 2, 2007 listing CACH, LLC as the creditor and the client as Collect America, Ltd.  Before Defendant had proffered its first non-authenticated affidavit[10] in the case of CACH, LLC v. Pascal A. Stroud case #2008-0860-SP-23 small claims it stated in its Complaint[11] @ ¶3 that it is the rightful owner pursuant to an assignment from BOA and attached to the complaint was (1) Certificate of Assignment (Fraud on the Court) (2) devoid as inadmissible as to having any evidentiary value. This is further illustrated by the admission of its own counsel[12]in which he states "In the case [CACH, LLC. v. Pascal A. Stroud] at bar, although the documents [legal assignment of debt] were not able to provide at the onset of litigation..." counsel for CACH has admitted to the Florida Bar that the lawsuit was filed without standing and was reprimanded[13].

i.  Defendant proffered as an attachment to its Complaint a Business Record Affidavit with the litigation caption and sworn by Lori Byrd the custodian of records for CACH of the BOA Bill of Sales dated March 29, 2007. However, it

---

[7] DNS Equity Group Inc. v. Lavallee 2010 NY Slip Op 50298(u) [26 Misc 3d 1228 (A)]
[8] CENTRAL OHIO CREDIT CORP. v. Jones, 17 Fla. Weekly Supp. 190a.
[9] See Exhibit P-5 STD 508
[10] See Ex. P-20 STD -1et
[11] See Ex. P-8 STD – 174 #3
[12]See Ex. P-7 STD – 209
[13] See Exhibit P-6 STD – 232-233

shows only (1) Bill of Sale (BOS) of charged-off receivables Post Agency Card Sale – March 15, 2007 (2) No. of accounts 14,171 and (3) the price and principal balance redacted. There is no account number or anything with Plaintiff's signature, name or account number.

ii.   Defendant attached as exhibit "A" a four page BOA card member agreement that is illegible beyond and (1) you cannot read the terms or the date (2) there is no reference to Mr. Stroud or the account number and as a unsophisticated consumer did not know it to be inadmissible hearsay as he assumed the debt was legally his when it was not as he discovered months later. However, after becoming more educated in his credit repair efforts Plaintiff realize there has been shown no evidence that he owned the debt. Plaintiff then sent correspondence to counsel[14] for CACH, LLC and as a response[15] received for the very first time 4 BOA account statements with account number #7332 instead of #2374 that CACH, LLC Complaint was filed under. Plaintiff sent a second letter[16] of his confusion and asked for an answer or he would stop payment, re-open the case and eventually file a lawsuit, no response was given and payments were stop and the plaintiff re-open the case[17] the court after it was reviewed in the judges' chamber the judge commented on how convoluted this case was as well as the discrepancies of the account statements and granted Plaintiff relief[18] from the stipulation, in the same hearing CACH, LLC request an immediate trial[19]   and filed a witness and exhibit list containing additional bank account statements #7332 up to 3/2006. Plaintiff asked the court to strike both list citing especially the account statements the Defendant then sent Mr. Stroud its motion to voluntary dismissal.[20]

iii.  Defendant attempts to use inadmissible affidavits and another Bill of Sale as follows:

---

[14] See Exhibit P-16 STD – 186-187
[15] See Exhibit P-15
[16] See Exhibit P-16 STD – 188-190
[17] See Exhibit P-49
[18] See Exhibit P-14 STD - 193
[19] See Exhibit P-19 STD - 195
[20] See Exhibit P-21 STD - 196

a. Defendant's first Affidavit DE #89 @ 8 (1) with a barely legible name I'll just state as L. Rice has no attach supporting document(s). There is no attached statement to authenticate that L. Rice was employed on or near the time of the alleged creation of this account or any information about are absent other than she is a bank officer (2) ¶2 has no attachments in support of its statement to show the court what was recorded at or near the time of the alleged transaction (3) ¶3  her statements are just conclusory absent any confirming documentation and is hearsay (4) ¶4 claims to have rights based on the referenced exhibit "A" BOA card member agreement that has been shown to be inadmissible hearsay when a clear copy[21] shows the date as 1999 five years from its alleged open date of June 1994 (5) ¶5 Defendant has produced nothing to show that it has a legal right as an assignee to this account when it filed the lawsuit (6) Mr. Stroud has not been shown by this Complaint any attachments that he agreed to any terms and accepted any liability.

b. Defendant's second Bill of Sale (BOS)[22] mention a Forward Flow Agreement between BOA and CACH it also states "assigns all rights, title and interest of Seller in and to those certain Accounts as defined in the Agreement..." this BOS does not specifically mention Mr. Stroud or the alleged account and the phrase "those certain Accounts [plural] could mean anyone in general and no one in particular. This agreement was established on March 29, 2006 seven months prior to when BOA admits it obtained the account on October 21, 2006 from MBNA[23] Mr. Stroud was never provided a copy of this agreement even in the present case[24].

c. Defendant proffers another affidavit of DE #89 @ 9 during the instant case as an alternate to having a legal assignment still do not show an assignment in accordance to Florida law to show that the Defendant  was a real party in interest as a legal assignee to show standing when it filed the lawsuit against Mr. Stroud.  However, this new affidavit completely fail in that area because (1) it suffers the same fault as the first affidavit as  ¶1 there's no supporting documentation (2) in ¶¶2-3 it would be impossible for the affiant to have knowledge at or near the time of the transaction

[21] See Ex. P-36 STD - 355
[22] See Ex. P- 11
[23] See Ex. P-12 Both BOA's letters
[24] See EX. P-9 STD – 812 #5

recorded since as a FIA Card Service employee that company did not exist until 2006[25] (3) this affidavit was created or sworn on December 20, 2011 while in this litigation where as already stated BOA has admitted it is not the original creditor making this affidavit null and void. BOA states that it has denied providing the affidavit.[26]

d. Finally, this Affidavit of Jay Mills DE #89, as multiple inconsistencies stating with (1) on credit report[27] it status is "another lender" (2) Defendant refuse to provide any detail of the sale [28] (3) the statement is conclusory when no material document is provided (4) knowing the business records[no probative value] and showing the business records [has probative value] that you know and can prove is material to any stated fact (6)has been previously discussed (7) none of these affidavits has any attached document to show plaintiff signed and agreed to the terms of and liability to the account in controversy, the alleged account balance contradicts BOA's balance of $1,464.10,[29] the change in account numbers are only standard on active accounts on an original or merger and there must be a notice sent to the account holder of the change in order to opt-out to any changes from the old to the new account. The Office of the Comptroller of the Currency (OCC) policy[30] guidelines when reporting to a credit reporting agency (CRA) to follow industry standard not to change account numbers and states:

> Some commenters suggested that the proposed component relating to furnishing information after **mergers** and other transactions should more specifically direct furnishers to
> (1)      instruct CRAs to delete accounts after sale or transfer to decrease the incidence of duplicate accounts and
> (2) follow industry standard reporting guidelines **not to change account numbers**, ID numbers, portfolio types, or account opening dates. Some commenters noted that the problems of duplicative reporting and re-aging of account information are common for accounts that have been sold or placed with debt collectors
> Section III.(g) of the final guidelines encourages furnishers to provide information about consumers to CRAs following **acquisitions** or transfers of accounts or other obligations in a manner that prevents re-aging of information, duplicative reporting, or other problems similarly affecting the accuracy or integrity of the information furnished.

---

[25] See EX. P-3 STD 227a #1
[26] See Ex. P-21 STD 1119 #6
[27] See Exhibit P-19 STD 64a
[28] CACH only produce 2 BOA Affidavits the one in Sm. Cl. and the instant case
[29] See Exhibit P-12 STD 157 ¶3
[30] 31494 Federal Register /Vol. 74, No. 125 /Wednesday July 1, 2009 Rules and Regulations

Mr. Mills believe that changing account numbers are the normal business procedure when the opposite is true (9) as stated previously in ¶8 subpart A that the stipulation is null and void (10) misrepresentation of the material fact (11) more misrepresentation (12) as explained previously to the true event this depiction of events is not true (13-15) Defendant had no FCRA right to even be on the Plaintiff's credit file at all much less to attempt to conduct an allege investigation or even an "e-Oscar investigation," when plaintiff attempted to dispute Defendant directly at the address listed on the credit report by certified mail[31] it was returned as undeliverable with no forwarding address and this address was not removed on succeeding credit reports.

4. Mr. Stroud does not reside at the address stated after July 2005 nor has Defendant sent any document to this address in the instant case. Mr. Kohlmyer CACH's counsel misinterpret or misreads the deposition transcript taken on March 22, 2012 page 9 never mention at all that Mr. Stroud resided at the address he mention at anytime doing this litigation.

5. Defendant is relying on unsubstantiated as well as conclusory statements made by BOA, the statements in question has not been authenticated, has multiple inconsistencies and there is no evidence Plaintiff ever received one at any of the addresses listed on them as Plaintiff will provide to the court his declaration DE #95 that these statements were never received by him.

6. Plaintiff has stated and provided evidence in ¶2 showing him being notified on 10/2/2007 and not for a BOA account.

   A. Plaintiff agreed to the stipulation assuming at that time the debt to be his, plaintiff was an unsophisticated consumer and was intimidated by the court system, Mr. Stroud assumed that no one would sue him and file it with the court unless it had some validity and knowing already that he did have credit problems in his past assumed this must be one of them and on that bases is the reason he signed the stipulation agreeing to make payments.

7. Defendant use of a creative imagination to re-create events told to him in the deposition referred to previously as well as the material facts of the events. The Defendant states that "soon thereafter it came to the parties' attention that the

---

[31] See Ex. P-24 STD – 351, 338

account number on the statements (ending in 7332) was not reflected in the first Affidavit of Sale" that never happen.  Defendant is attempting to show itself in a good light when in fact it is in bad faith for the following reasons:

A.  Plaintiff's second letter[32]  sent on or around November 28, 2008 of my continued confusion and that if Mr. Stroud didn't get a satisfactory answer meaning something with his signature that would authenticate the account he would stop making payments. Mr. Stroud didn't received a response and therefore stop making payments and re-open[33] that case on January 9, 2009 and asked the court for relief from the stipulation that he signed and returned payments made. The court[34] granted plaintiff's motion on January 11, 2010 during that same hearing Defendant requested a trial[35] as soon as possible and it was set for February 10, 2010 to determine the issue of Liability and Damage. Defendant filed its Exhibit List on January 29, 2010 and Witness List on the same day. Plaintiff asks the court to strike both list. On February 10, 2010 the court recorded CACH voluntary dismissal[36] without prejudice. And that's the way the material facts go.

B.  Plaintiff sent a letter of dispute to Equifax dated March 11, 2010[37] in reference to CACH inaccurate information. Equifax updated report[38] dated April 15, 2010 which show that in The Collection Agency Information the CACH account #0795 is verified as belonging to Mr. Stroud and gives CACH address to contact as: *Cach, LLC, 370 17th St, STE 5000, Denver CO 80202-5690*. Mr. Stroud attempted to contact CACH directly at that address on May 10, 2010 and received a returned mail as undeliverable[39] at that address given with no forwarding address. This report also incorrectly stated the case number as 08-086**8** SP 23 instead of 08-086**0** SP 23 in the CRA's search for public records of the case. CACH also verified this account as accurate two

---

[32] See Ex. P-16 Plt. 2nd Letter to Mr. Borack
[33] See Ex. P-14 STD 191 Motion to re-open case
[34] See Ex. P-14 STD 193-194 Motion granted
[35] See Ex. P-14 STD 195 CACH request for trial
[36] See Ex. P-14 STD 196 CACH Voluntary Dismissal
[37] See Ex. P-24 STD 340x
[38] See Ex. P-24 STD - 356
[39] See Ex P-24 std -351

months after it voluntarily dismissed the case and after being unable to prove liability or damage. Equifax deleted this CACH account as shown its report dated June 18, 2010[40] still showing the same undeliverable address.

   C. Plaintiff received his annually free Trans Union credit report on January 6, 2010[41] noticing a CACH entry. Plaintiff sent Trans Union a dispute letter[42] dated January 19, 2010 stating that the parties are in litigation.  On Trans Union's report dated March 16, 2010[43] it shows CACH account deleted.  This was definitely no **"Scrivener's Error"** as shown by the previous paragraphs.

8. Defendant spends a huge amount of effort to obtain a suitable affidavit than it does providing a legitimate assignment of debt showing it to be the then new legitimate owner and assignee. An assignment is the heart of a debt collector's proof of being a real party in interest. In *Unifund CCR Partners . Cavender* the court held:

> **The Court has reviewed the documents presented by the Plaintiff, Bill of Sale and the Assignment, and finds that they fail to sufficiently identify the accounts that were assigned or sold to the Plaintiff. Neither the Bill of Sale nor the Assignment indicate the account numbers or names of account holders. They do not provide any information that would allow the Court to determine if the alleged account of Defendant was one of the accounts sold or assigned to the Plaintiff.**
>
> **Without any indicia of ownership that would sufficiently identify the true owner of the account at the time that Plaintiff filed this action, the Plaintiff is unable to prove that it had standing to bring the action. <u>An assignment is the basis of the Plaintiff's standing</u> to invoke the processes of the Court in the first place and is therefore an essential element of proof.**

9. Plaintiff cannot respond to a future affidavit.

**MEMORANDUM OF LAW**

## <u>I Standard of Review</u>

---

[40] See EX. P-24 STD - 339
[41] See Ex P-2 STD 69a-69b
[42] See Ex. P-2
[43] See Ex

Rule 56(c) of the Federal Rules of Civil Procedure shows that there are indeed genuine issues. There are no conclusory allegation at all claims has been documented with material evidence that support those facts, in fact the opposite has been shown by the Defendant. Plaintiff has responded in the affirmative as to evidence to support his claim and they are under the substantive law that does govern this issue. A reasonable jury can see from the evidence produced by Plaintiff and the lack of any by the Defendant is enough material fact to quash the motion for summary judgment as Plaintiff has provided probative evidence and defendant's claims are conclursory without a scintilla of evidentiary proof.

**II. CACH did not comply with FCRA §1681 as the information reported was Inaccurate.**

>   FCRA – Scope and Application of Statute.

>   CACH Reported Inaccurate Information  - Thus Mr. Stroud's First Claim does not fail.

CACH, at no time reported accurate information to the CRAs as has been shown that there is no clerical error but an intentional misrepresentation. Defendant must consult all of the relevant statements made in the referred deposition as has been referred to in There was no meeting of the minds of any discrepancy  There is no "scrivener's error" Plaintiff has already addressed of different account numbers, stop payments.  Plaintiff states that not any of the co-Defendants has produced a scintilla of evidence to show that Mr. Stroud has a legal obligated for and to this debt as review of every statement proffered from 2002 to 2007 some 5 years of no charges made on these statement except one on the day after the allege June 11, 2005 charge off date. Any casual view of any of Plaintiff's credit reports would reveal that he maxes out any credit card account he possessed and to believe that he would not make one charge is a stretch to say the least.  The exhibits to this motion are fraudulent as to the account statements and the affidavits are inadmissible hearsay without supporting documentation.

**III. CACH engaged in an "Unreasonable Investigation" Which was willful and negligent.**



Mr. Stroud has already shown throughout this motion that Defendant information reported cannot be accurate as the evidence has shown and that Defendant has not shown it to be a real party in interest with legal standing to have filed a meritless lawsuit, that it relies on affidavit after affidavit until it can get it right and never does as it still cannot produce a scant of evidence to prove it had ownership even when it was granted a two week extension as shown in DE #38 Defendant's motion and DE #43 motion granted.  Defendant's  strategy of using the doctrine of "scrivener's error" when the doctrine of "unclean hands" is more suitable.

## WILLFUL § 1681n

§ 616. Civil liability for willful noncompliance [15 U.S.C. § 1681n]
(a) *In general.* Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of
(1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
(2) such amount of punitive damages as the court may allow; and
(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

Defendant's information supplied to Equifax and Trans Union were inaccurate and false as well as its investigation. Plaintiff has no internal knowledge of both the CRA or CACH as to their e-Oscar transactions as Defendant only provided three fully redacted pages[44] with only the Plaintiff's name revealed and it cannot be determine if they are from Equifax or Trans Union or both. Defendant has no legal assignment at the time it reported the inaccurate information and relies on faulty as unauthenticated BOA affidavits with no supporting documentation that are used for a replacement to a legal assignment which by the Florida law of evidence[45] has failed. In the case of Valenica[46] shows that evidence must be consistent with the complaint or defense.

Defendant gives dates of disputes without mentioning which CRA it dealt with.

---

[44] See Ex. P-30
[45] Florida Statute 90.901
[46] Valencia v. Deutshe Bank National Trust Company No. 4D09-3297, (FL App. 4th DIST., Decided June 22, 2011)

**CACH conduct is Willful and is not based on  "Scrivener's Error" but on the doctrine of "Unclean hands"**

It does not matter how the Defendant spins the events in the previous litigation [small claims] Defendant willfully introduced evidence to (1) misrepresent to the court and Mr. Stroud that it had a legitimate assignment as the new owner of the account #2374 from BOA as its initial proof it attached to its Complaint a "CERTIFICATE OF ASSIGNMENT" by its employee Lori Byrd, also attached was a "BUSINESS RECORD AFFIDAVIT" that does not show any relevance or prima facie proof of the account it Complaint, it provided as exhibit "A" an illegible BOA card member agreement with no indication it belong to the Plaintiff and producing a clearer copy on its evidence list that reveals a 1999 date five years after the alleged open date of 1994 (2) knowing this to be insufficient Defendant the produced its first "AFFIDAVIT OF CLAIM AND CERTIFICATE OF DEBT" on two different occasions this being the first that have a very illegible stamped name and date the second one copy shows that the item were made a bit clearer,  there were no substantiating document attached on either occasion even though the affiant claims to base it on computerized and hard copy books and records of BOA, in ¶4 it claimed justification to standing pursuant to the BOA card member agreement exhibit "A" dated 1999, in ¶5 BOA allegedly sold this account to Defendant who has never produced those documents even when requested in this discovery process that would show the alleged terms but there is only an absent of  any supporting documentation this affidavit has no probative value and is inadmissible as hearsay. Defendant's own counsel at the time admitted this when he initiated the lawsuit it had know  he had no standing hoping to produce them in discovery which means that everything that was initially submitted with the complaint as well as the complaint itself was a lie and fraud on the court. (2) With just these material facts alone Defendant could not have conducted a reasonable investigation if it did nothing but breath and that it could not provided accurate information afterward to be able to verify the information it reported as true. (3) Defendant is a seasoned debt collector knowing or should know what is required for legal standing and at that time it hired a lawyer and its firm that specialize in consumer debt and collection[47] there is no way that the two would not

---

[47] See Ex. P-33

know the necessary steps to take to attain standing to sue Plaintiff when commencing its lawsuit as dictated under Florida law[48] if that claim is based on a written document [assignment of debt] then that is what it has to produce Defendant did not proffer a legal assignment and as to this motion still has not proffered a legal assignment.

### NEGLIGENT FCRA § 1681o

Defendant is negligent as it has admitted it has no policy in place for dealing with disputes Defendant believes without providing any evidence that the CRA (Un-named) provided scant information to work with through the e-Oscar system which on that point Plaintiff agrees however even if it received just a code as not his is enough for the defendant to know from its own records that it cannot verify, or validate legally that the account belong to Mr. Stroud. Defendant reference to *Westra v. Credit Control of Pinella*, 409 F. 3d 825, 827 (7th Cir.2005) is not applicable, even if there is no fraud or identity theft was presented to Defendant had placed inaccurate information on April 2010 two months after it voluntarily dismissed it in court as to Mr. Stroud's liability and damages to it. [i] The claim Defendant seems to be trying to imply with Westra is that given no information about fraud or identity theft all it could do was check the name address and date of birth to match the CDV implying that it has a legitimate right to be on the report in the first place when it didn't, litigation [small claims] ended on January 29, 2010  yet this information is report as of April 2010 therefore,  absent any notice of fraud or ID Theft or even if Plaintiff didn't dispute anything at all Defendant's made up account should have never existed.

### IV. Plaintiff's Claim for Defamation-Libel are not preempted by the FCRA.

FCRA § 1681h (e)

---

[48] Sm. Clm. Rule 7.050

FCRA has two immunity statutes one has a qualified immunity 1681h (e) and total immunity 1681t. Defendant has correctly stated both their congressional creation 1681h (e) states:

(e) *Limitation of liability*. Except as provided in sections 616 and 617 [§§ 1681n and 16810] of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 609, 610, or 615 [§§ 1681g, 1681h, or 1681m] of this title or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report, *except as to false information furnished with malice or willful intent to injure such consumer.*

i. *False Information*

Defendant's as has been shown to have provided false information to two CRAs as a legal entity when it was not. Standing alone it should not have an entry in either of plaintiff's credit file as it was never a legal entity to begin with as in the Diprinzio case[49] states that 1681h (e) requires furnishers to accurately report what a consumer has done. The evidence shows that the Defendant did not do this.

ii. Willful

‾  In June 4, 2007 The U.S. Supreme Court[50] rule on the meaning of "willful" as meaning knowing or recklessly violating FCRA the court states:

As to the definition of what constitutes recklessness, the Court held that: "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at *41...

FCRA § 1681t

The alleged total immunity

§ 625. Relation to State laws [15 U.S.C. § 1681t]

(a) *In general*. Except as provided in subsections (b) and (c), this title does not annul, alter, affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to the

---

[49] *Diprinzio quoting Crane . Trans Union, L.L.C.,* 282 F. Supp. 2d 311, 317 (E.D. Pa 2003)
[50] *Safeo Ins. Co. v, Burr,* No. 06-84___, 2007 U.S. Lexis 6963 (June 4, 2007)



collection, distribution, or use of any information on consumers, <u>or for the prevention or mitigation of identity theft</u>, except to the extent that <u>those laws are **inconsistent** with any provision of this title</u>, and then only to the extent of the inconsistency.

<u>General preemption of "inconsistencies" to state law.</u>

Since its enactment the FCRA has included a general statement concerning preemption of inconsistent state law.[51] This title does not annul, alter, affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, conflict with federal law such that compliance with both is impossible, or the state law is an obstacle to the accomplishment of the full purposes and objectives of Congress.  This is in harmony with the Federal Trade Commission (FTC)[52] which states:

**Section 625(a)** [is also 1681t] sets forth a general rule that the FCRA preempts state law only to the extent <u>that those laws are inconsistent with the FCRA</u>. Sections **625(b) and (c)** then prohibit or limit state law in specified areas, in some cases specifically "grandfathering" specified state laws that were in effect before the relevant FCRA provisions were enacted.

The FTC in summarizing in its 40 years of experience with FCRA as to this statute which gives no mention of total immunity unless there is conflict between Federal and State Law, and whenever that is the case the  Federal will always trump so in that area where there is conflict or inconsistencies between Federal and State in which the FCRA duties are regulated by law the Federal law has total immunity from State law claims therefore cannot be construed by any Defendant as having total immunity if those State laws are consistent with the FCRA.

Defendant argues that 15 U.S.C. § 1681t (b) (1) (F) preempts all of plaintiff's state law cause of action[53]. In this section 1681t (b) (1) (F) states that no requirement or prohibition may be imposed under the law of any State.... With respect to any subject matter regulated under.... § 1681s-2 of this title that relates to the responsibilities of persons who furnish information to CRAs. Plaintiff's research shows that §1681t (b)(1)(F) was not included in the original FCRA, but was added later by the 1996 amendment of the Act and that congress never removed the original provision leaving both sections in place. Defendant contends that section 1681t (b)(1)(F) subsumes 1681h (e), making all state law claims against furnishers of credit information null and void

---

[51] FCRA : PREEMPTION of STATE LAW "A Guide Through Muddy Waters by Chad M. Pinson & John B. Lawrence
[52] 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT.
[53] *Diprinzio . MBNA AMERICA BANK, N.A.*

under the FCRA, that approach would then render 1681h (e) utterly superfluous. This statute plainly states in subpart (a) as read shown that when there is a conflict or inconsistencies between either Federal or State Law that Federal trumps, there is nothing in Plaintiff's cause of action where the state law is attempting to subjugate any of Defendant's duties under the Act. The FTC also has a "basic rule" that State Law is preempted only when compliance to inconsistent State Law would result in violation of the FCRA. Defendant seems not to realize that congress left this provision in place not to be ignored and if congress considered it a bad law it would have done away with it.

In Diprinzio the court states and the Plaintiff concur,  as a primary matter that it disagrees with  Defendant MBNA's claim that is also claimed by Defendant CACH, LLC., that section 1681t (a) (1) (F) subsumes section 1681h (e) reasoning that "this approach would render the latter utterly superfluous and to presume that Congress wished to repeal an existing provision without clearly saying so would be an awkward act of law-making that this Court should not and shall not undertake" See TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S. Ct. 441 (2001) ("[I]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)); Duncan v. Walker, 533 U.S. 167, 174, 121 S. Ct. 2120 (2001) ("We are reluctant to treat statutory terms as surplusage in any setting.") (internal alteration and quotation marks omitted).

FCRA 1681 Congressional findings and intent.

(A) Congress enacted the FCRA in 1970 to govern the fair and accurate credit reporting by businesses and for protection for the American citizen and that:

(1) The banking system is dependent upon fair and accurate credit reporting. Congress knew that inaccurate reporting prevents the efficiency of that system and that unfair (meaning different standards between business and consumer) which would undermine public trust in business especially the financial community.

(2) An elaborate mechanism (which is not eOscar as a quick way to investigate) has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.



(3)  The CRA's role is vital in assembling and evaluating consumer's credit and other information.

(4) The CRA must (not should) but must exercise their grave responsibilities with fairness, impartibility and to respect the consumer's privacy.

These findings show that although there is concern with the efficiency in the business marketplace it also shows its concern for the consumer and although its initial concern was directed to CRAs, it also at that time was concern that furnishers would not think that they were above reproach in providing inaccurate information so with section 1681h (e), so to believe that after the 1996 amendment that Congress would dumped its deterrent for bad behavior conducted by furnishers in providing inaccurate consumer credit information in section 1681h (e) would then attach section 1681t (a) (1) (F) giving or taking away the very deterrent to bad conduct in reporting inaccurate information to total immunity in spite of any bad behavior would be an unjust as well as unfair provision and to leave in place section 1681h (e) for it seems nothing more than just for a reminder of the old days of an empty figure of the law with just nothing but words.

ii. Defendant is not preempted in filing a claim for libel to false information .

Section 1681t states that no requirement or prohibition may be imposed under the laws of any state with respect to § 1681s-2, relating to the responsibilities of furnishers. Section 1681h(e) preempts state law negligence claims for providing inaccurate information to CRAs. In reconciling the two sections, the Courts has adopted **the statutory approach,**[54] that § 1681t(b)(1)(F) preempts state statutory claims against furnishers of credit information (based on inconsistent State law), and § 1681h(e) preempts state tort or common law claims except where there is false information furnished with malice or intent to injure.

---

[54] *Purcell v. Bank of America*, 2010 U.S. Dist. LEXIS 126704 (N.D. Ind. Nov. 30, 2010)

The statutory approach[55] is a more applicable approach as it attempts not to render a statute as irrelevant that according to the general mandate courts should consider statutes as a whole in order to avoid nullifying specific provisions.

Basic rule in statutory  construction

Plaintiff has done some research on case law were the presiding judge has in their summation explains the way to interpret all statutes as follows[56] Statutory language is not to be construed as "Mere Surplusage." Surplusage mean[57] Redundant words in a statute....; language that does not add meaning. See _Sprietsma v. Mercury Marine_, 537 U.S. 51, 63 (2003) (interpreting word "law" broadly could render word "regulation" superfluous in preemption clause applicable to a state "law or regulation"). _Connecticut Nat'l Bank v. Germain_, 503 U.S. 249, 253 (1992) (finding that, in spite of considerable overlap between two provisions, each addressed matters that the other did not).

A.  <u>Reconciling the Provisions.</u>

<u>The Statutory Approach is the acceptable one.</u>

The Diprinzio case states:

The Court will not ignore the fact that Congress chose to leave section 1681h (e) in place after adding section 1681t(b)(1)(F). Because the United States Supreme Court and then Third Circuit have historically presumed against implied repeals and textual surplusage, this argument is flawed. As the canons of statutory construction lead us away from finding that section 1681t(b)(1)(F) completely subsumes section 1681h(e), this Court now looks to reconcile the two in a sensible manner. Plaintiff believes the Court should employ a so-called "<u>temporal analysis"</u> to the problem. This approach reasons that section 1681t(b)(1)(F) only applies to "subject matter regulated under . . . section 1681s-2 . . . ." Id. Plaintiff argues that because subsection (b) of section 1681s-2 is triggered only when a furnisher of credit information receives notice of a dispute _from a credit reporting agency_, state law claims based prior to the moment of this trigger do not fall under the "subject matter" of section 1681s-2 and, thus, are not preempted. See generally Aklagi v. Nationscredit Financial, 196 F. Supp. 2d 1186, 1193 (D. Kan. 2002). This argument, however, is flawed by virtue of the fact that "§ 1681s-2(a)(1)(A) charges furnishers of information with a duty to report accurate information _regardless of whether the furnisher has notice of the dispute_." Gordon v. Greenpoint Credit, 266 F. Supp. 2d 1007, 112-13 (S.D. Iowa 2003) (emphasis

---

[55] Greene v. Capital One Bank
[56] CRS Report for Congress:Statutory Interpretation, updated August 31, 2008
[57] Black's Law Dictionary

added). Because section 1681s-2(a)(1)(A) applies irrespective of time, the temporal approach described above seems "strained at best." Gordon, 266 F. Supp. 2d at 1013. Instead, we look to the ordinary meaning of the statute's text. The plain language of section 1681t(b)(1)(F) states that no "requirement or prohibition" can be imposed under state law "*relating to the responsibilities of persons who furnish information to consumer reporting agencies* . . . ." Id. (emphasis added). That Congress so deliberately specified the *type* of state law claims prohibited under this section suggests they did not want to prohibit *all* state law claims. If that had been their goal, they would have plainly stated so. Rather, section 1681t(b)(1)(F) clearly reflects Congress' desire to prohibit all state statutory regulations pertaining to the accurate reporting of credit information.

Plaintiff's research of this case is persuasive in the reconciling of both seemingly contradictory statute but the court seems to give reasonable clarity when it states:

This presumption is bolstered by the plain language of section 1681h(e), 1681t(b)(1)(F)'s sister section, which states that "no consumer may bring any action or proceeding in the *nature of defamation, invasion of privacy, or negligence*" except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e) (emphasis added). Again, Congress's care to specify the nature of the claims this section applies to indicates their intent. Read alone, section 1681h(e) strongly suggests application only <u>to state common law</u> torts. When read alongside section 1681t(b)(1)(F) however, the symmetry is clear: section 1681h(e) applies to state common law and section 1681t(b)(1)(F) <u>applies to state statutes</u>. ... At least one case from this Court has reached a similar outcome. In **Jaramillo v. Experian Info. Solutions, Inc.**, 155 F. Supp. 2d 356, 363 (E.D. Pa. 2001) ("Jaramillo I"), the court first held that 15 U.S.C. § 1681t(b)(1)(F) preempted state law claims based on defamation and the state consumer protection law, but upon reconsideration, permitted the defamation claim to proceed. Compare Jaramillo, 155 F. Supp. 2d at 362, with Jaramillo v. Experian Info. Solutions, Inc., Civ. A. No. 00-5876, 2001 WL 1762626 (E.D. Pa. May 21, 2001) ("Jaramillo II"). Other courts have arrived at the same interpretation. See, e.g., Johnson v. Citimortgage, Inc., 351 F. Supp. 2d 1368 (N.D. Ga. 2004); **Jeffery v. Trans Union, L.L.C.,** 273 F. Supp. 2d 725 (E.D. Va. 2003); Carlson v. Trans Union, L.L.C., 259 F. Supp. 2d 517, 521 (N.D. Tex. 2003). See, e.g., Tennessee Valley Authority v. Hill 437 U.S. 153, 190, 98 S. Ct. 2279 (1978) ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." (quoting Morton v. Mancari 417 U.S. 535, 550, 94 S. Ct. 2474, 2482 (1974))); Posadas v. National City Bank, 296 U.S. 497, 503, 56 S. Ct. 349

<u>V. Plaintiff's State Law Claims or not Barred by the Litigation Privilege.</u>

Defendant makes the allegation that that Mr. Stroud's defamation claim is covered by litigation immunity. In the case of <u>*North Star Capital Acquisitions, L.L.C.*</u> (North Star)[58] explains the litigation privilege immunity. The court states "The litigation privilege in Florida provides all persons involved in judicial proceedings, including parties and counsel, an absolute privilege from civil liability for acts taken in relation to those proceedings. In <u>*Levin, Middlebrooks, Moves & Mitchell, P.A. v. U.S. Fire Ins. Co*</u>., 639 So.2d 606, 608 (Fla. 1994). Florida courts have indicated that the litigation immunity

---

[58] North Star Capital Acquisition LLC., v. Krig, US DC Middle Dist. Jacksonville Div., Case No. 3:07-cv-264-J-32MCR. DE #114.

privilege is an affirmative defense. Am. Nat'l Title & Escrow of Fla. Inc. v. Guarantee Title & Trust Co., 810 So.2d 996, 998 (Fla. 4th DCA 2002). However, the counterclaim Defendant sought dismissal based on the litigation immunity claim as an affirmative defense as is in the instant case for Defendant's summary judgment motion.

The court denied the counterclaim's motion to dismiss stating:

> Counterclaim plaintiffs allege that the inclusion of the letter and stipulation with the court required pleadings "was a willful and intentional misuse of process for the wrongful and unlawful purpose of collecting a debt by misleading and misrepresented means." See e.g. Doc. 3 ¶ 33. While the letter and stipulation might be considered "the initiation of settlement negotiations taken in furtherance of the proceedings, as Orovitz asserts, see e.g. Doc. 8 at 6, that connection is more attenuated here than in typical settlement negotiations. For example, the letter makes several statements that may distinguish it from a direct attachment to the litigation. See e.g. Doc. 3 ¶ 17 ("If we agree on an amount, you will not have to go to court. (This is your last opportunity to resolve this matter without going to court.)) (emphasis in original). While the Florida Supreme Court recently held that the litigation privilege applied to statutory causes of action, it withheld judgment on both when and in what circumstances the privilege would apply. See Echevarria, McCalla, Raymer, Barrett & Frappier, etc., et al., v. Cole, 950 So. 2d 380, 384 (2007); see also id. at 387 (Wells, J., dissenting) (stating that the litigation privilege is inapplicable "when communications are separate from pending litigation and are not necessary in order to pursue future litigation").

The court in determining if counterclaim defendant has a valid defense as a matter of law against counterclaim plaintiff and referred to the Florida Supreme Court and the policy reason for litigation immunity which states:

> In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

In _Levin_[59] the privilege applies to conduct that occurred during settlement negotiations. However, not every event bearing any relation to litigation is protected by the privilege because, as noted by counterclaim plaintiffs, "[i]f the litigation privilege applied to all actions preliminary to or during judicial proceedings, an abuse of process claim [or libel] would never exist, nor would a claim for malicious prosecution. The court continued its reasoning, that there appears to be no binding precedent concerning the precise issue presented in this case, that is, whether the litigation privilege protects

---

[59] Levin, Middlebrooks, Moves & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So.2d 606,608 (Fla. 1994)

<u>arguably misleading or deceptive documents which are served with the process and complaint to initiate a case.</u>

The courts hold that judicially created privilege must be measured against the statutory right under Florida law to sue debt collectors for alleged unfair collection practices. Yet, the mere existence of FCCPA does not attach <u>the privilege to every communication</u> between litigants; rather, the communication must be analyzed in light of its relation to the litigation. The court referring to Echevarria[60] evaluating if the reinstatement letter sent is considered judicial immunity and remanded back the trial court and the First District received the trial courts response:

> In denying the defendant's motion for summary judgment, this Court necessarily ruled that the litigation privilege was no basis for dismissal. This court's decision was predicated on the fact that <u>the false representations</u> made by the defendant <u>were not made in the course of a judicial proceeding</u>. This court necessarily considered the application of the litigation privilege but determined that it had no application in the instant case because the false representations were not made in the course of a judicial proceedings.

The court states that applying the litigation privilege to the communications here would eviscerate the FCCPA and allow attorney debt collectors <u>to avoid liability</u> under state law for potentially abusive and harassing collection practices simply by filing a lawsuit before attempting to collect a debt. While the line between settlement negotiations inherent in most civil suits and debt collection activities might be hard to discern in some cases, it is not here. <u>The Letter and Stipulation</u> served on counterclaim plaintiffs <u>with the summons and complaint were more akin to an attempt to collect a debt in its entirety, rather than a settlement negotiation; accordingly, the litigation immunity privilege is inapplicable.</u>

Although this case states reference to both the Federal and State debt collection statutes it makes clear that attempting to use the court process as an instrument to collect a debt is not litigation as this case mirrors Plaintiff's small claims case against Defendant.

---

[60] Echevarria, McCalla, Raymer, Barrett & Frappier, et al., v. Cole, 950 So. 2d 380, 384 (2007)

1. Defendant is libel for false statements in the dunning letter dated October 2, 2007[61] sent to the plaintiff and the inclusion of its letter and stipulation[62] attached to the summons and the Complaint.

2. Defendant's counsel in its small claim lawsuit David E. Borack was reprimanded[63]

## **CONCLUSION**

Based on the foregoing, PASCAL A. STROUD, respectfully ask the Court to  oppose Defendant CACH, L.L.C Motion for Summary Judgment in its entirety.

---

[i] There is nothing in Plaintiff's Complaint that alleged ignorance of identity theft dispute as pertaining to CACH's reporting of inaccurate information. If it was discussed in the April 2, 2012 deposition it was due to merging details as Mr. Kohlmyer CACH's attorney would question things pertaining to the other Defendants in another deposition.

---

[61] See Ex. P-5
[62] See Ex. P-8 The Defendant's Complaint & attachments
[63] See Ex-P-6 Florida Bar: NOTICE OF NO PROBABLE CAUSE AND LETTER OF ADVICE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been sent by US Mail on _May 1_____ 2012, with Clerk of the Court  and mailed to:

### SERVICE LIST

| | |
|---|---|
| Franklin Gordon Cosmen<br>9300 S. Dadeland Blvd.  4th Floor<br>Miami, FL 33156 | Maria H. Ruiz<br>1441 Brickell Ave. Suite 1420<br>Miami, FL 33131 |
| Ernest H. Kohlmyer<br>South Milhausen, P.A.<br>Gateway Center<br>1000 Legion Place<br>Orlando, FL 32801 | James Randolph Liebler<br>Courthouse Tower – 25th Floor<br>44 West Flagler Street<br>Miami, FL 33130 |

I HEREBY CERTIFY I have mailed by U.S. Mail the documents to all counsel on

record.

Pascal A. Stroud, *Pro se*
20760 N.E. 4th CT Apt. 204
Miami, FL.  33179
786-316-3055
pascalstroud@yahoo.com