# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 11-22489-CIV-GOODMAN

### [CONSENT CASE]

PASCAL A. STROUD,

      Plaintiff,

v.

BANK OF AMERICA, et al.,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTIONS

THIS CAUSE is before the Court on the motions for summary judgment filed by

Defendants Trans Union, LLC [ECF No. 74], Bank of America (n/k/a FIA Card Services,

N.A.) [ECF No. 80], Experian Information Solutions, Inc. [ECF No. 81], and CACH, LLC

[ECF No. 83].[1]   The Court has reviewed the motions, Plaintiff Pascal A. Stroud's

responses [ECF Nos. 95-96; 100-107; 118; 128-129; 132-133; 135-136] and the Defendants'

reply memoranda [ECF Nos. 110; 111; 113; 115; 137].  The Court also held an omnibus,

multi-hour hearing and is otherwise familiar with the filings and record of this case.

---

[1]     According to Bank of America's summary judgment motion, it merged with
MBNA American Bank, N.A. in October 2006 to form FIA Card Services, N.A.  [ECF No.
80, ¶ 4].  Because the docket for this case lists Bank of America as the Defendant, for
purposes of this order the Undersigned will refer to this party as Bank of America (or
BOA) and any reference to Bank of America should be construed as also meaning FIA
where appropriate.

For the reasons below, the Undersigned **GRANTS** the summary judgment motions, **CANCELS** all pending deadlines and the trial, and **CLOSES** this case.

## I.     INTRODUCTION

On July 12, 2011, Stroud filed a thirteen-count lawsuit under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (FCRA) and Florida law against the Defendants. Stroud's claims all stem from his efforts to force Defendants to investigate and correct what he contends is inaccurate information on his credit reports resulting from identity theft.  Stroud contends that Defendants' actions have caused him a credit denial, a negative credit reputation, and physical and mental injuries.

The Court must construe Stroud's complaint liberally because he is proceeding *pro se*.  *H&R Block E. Enters., Inc. v. Morris*, 606 F.3d 1285, 1288 n.1 (11th Cir. 2010).  To that end, it appears that Stroud's specific claims are as follows:[2]

### a.  BANK OF AMERICA – COUNTS I & II

Stroud alleges claims against BOA for violation of its duties under the FCRA, 15 U.S.C. § 1681s-2(b), as a furnisher of information, for failing to conduct a reasonable

---

[2]      Stroud labels two counts as Count VI and two counts as Count VIII.  [ECF No. 1, pp. 10-11, 13].  In order to avoid confusion, the Court will refer to these counts as Counts VI-A/VIII-A and VI-B/VIII-B, based upon the order Stroud listed the counts in the complaint.

investigation of Stroud's credit reporting dispute and for providing inaccurate information to credit reporting agencies under Florida defamation law.[3]

### b. CACH – COUNTS III & IV

Stroud alleges claims against CACH for violation of its duties under the FCRA, 15 U.S.C. § 1681s-2(b), as a furnisher of information, for failing to conduct a reasonable investigation of Stroud's credit reporting dispute and for providing inaccurate information to credit reporting agencies under Florida defamation law.

### c. TRANS UNION – COUNTS V, VI-A, VI-B, VII, & VIII-A

Stroud alleges five claims against Trans Union.  He contends that Trans Union violated: (1) 15 U.S.C. § 1681i(a)(2)(A) by failing to provide all relevant details of Stroud's dispute to the furnisher of the disputed information and § 1681i(a)(5) by mishandling allegedly unverifiable information; (2) § 1681i(c) by failing to place a notice of the dispute in his credit report; (3) § 1681h(e) by negligently or willfully including false information in his credit report; (4) § 1681g(a) by failing to provide Stroud with a credit report upon his request; and (5) Florida defamation law by providing an inaccurate credit report.

---

[3]    Stroud also references 15 U.S.C. § 1618s-2(a) in this and other claims.  § 1618s-2(a), however, creates a cause of action only for *governmental* agencies and officials -- not a *private* cause of action available to individuals such as Stroud.  *Chipka v. Bank of Am.*, 355 F. App'x 380, 383 (11th Cir. 2009) (citing 15 U.S.C. § 1681s-2(c)-(d) (imposing this limitation)).  Therefore, to the extent Stroud relies on this section in this or in any other claim, the Court liberally interprets those allegations as part of his other claims or, in the alternative, grants Defendants summary judgment on any claim under § 1618s-2(a).

### d.  EXPERIAN – COUNTS VIII-B, IX, X, & XI

Stroud alleges four claims against Experian.  Instead of providing specific factual allegations against Experian, Stroud simply states that he "incorporates the proceeding allegations by reference" and then references paragraphs from his allegations against Trans Union.[4]  Nonetheless, he states that his claims against Experian are based on 15 U.S.C. §§ 1681i, 1681h(e), 1681g, and Florida defamation law.

## II.    LEGAL STANDARDS

Summary judgment is appropriate when the pleadings, depositions, affidavits and exhibits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *Allen*, 121 F.3d at 646.  On a motion for summary judgment, the court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine

---

[4]     The Court notes that Stroud does <u>not</u> state that he is repeating the paragraphs from his claims against Trans Union under 15 U.S.C. § 1681c but otherwise he appears to be alleging the same claims against both Trans Union and Experian.

whether the evidence could reasonably sustain a jury verdict for the non-movant. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

The Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (citing *Evers v. G.M. Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)). "'[O]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial.'" *Leigh*, 212 F.3d at 1217 (quoting *Gossett v. Du–Ra–Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978)). A party's self-serving affidavit that contains only unverified, conclusory allegations does not create a genuine issue of material fact. *Lucas v. State Farm Fire & Cas. Co.*, No. 5:10-cv-460, --- F. Supp. 2d ----, 2012 WL 1074938, at *9 (M.D. Ga. Mar. 29, 2012) (citing *Evers,* 770 F.2d at 986).

## III.    ANALYSIS

The Court will address Stroud's claims on a defendant-by-defendant basis.

### a.  BANK OF AMERICA

Stroud's only FCRA claim is that BOA failed to conduct a reasonable investigation pursuant to 15 U.S.C. § 1681s-2(b) of the FCRA.[5]  15 U.S.C. § 1681s-2(b) defines the duties of a furnisher of information as follows:

---

[5]     BOA was the alleged owner of the account and debt that spawned Stroud's lawsuit.  As will be explained below, CACH purchased the account from BOA in 2007. [*See* ECF No. 83, p. 3].

(b) Duties of furnishers of information upon notice of dispute

(1) In general

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

Put another way, to avoid summary judgment on this claim, Stroud must show there is a genuine issue of material fact evidencing that Bank of America:

(1) failed to conduct an investigation with respect to the disputed information; (2) failed to review all relevant information provided by the consumer reporting agency pursuant to § 1681i(a)(2) of the FCRA; (3) failed to report the results of the investigation to the consumer reporting agency; or, (4) if an item of information disputed by a consumer is found to be inaccurate, incomplete, or cannot be verified after any reinvestigation, failed to modify, delete, or permanently block the reporting of that item of information.

*Howard v. DirecTV Grp,. Inc.*, No. CV 109–156, 2012 WL 1850922, at *4 (S.D. Ga. May 21, 2012) (discussing § 1681s-2(b) in the motion to dismiss context).   A furnisher of information is entitled to summary judgment if it conducts a reasonable investigation based upon the information regarding the dispute provided by the credit reporting agency, concludes that there is no evidence its information is inaccurate, and accurately reports its findings to the credit reporting agencies.  *Westra v. Credit Control of Pinellas*, 409 F.3d 825 (7th Cir. 2005).

15 U.S.C. § 1681s-2(b) does not define what constitutes a "reasonable" investigation.   But 15 U.S.C. § 1681s-2(a)(1)(A)-(D) provides that a furnisher of information may not furnish information to a credit reporting agency if it "knows or has reasonable cause to believe that the information is inaccurate" and that "reasonable cause" "means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information."  *See also Groves v. U.S. Bank, N.A.*, No. 8:10–CV–2665–T–17TGW, 2011 WL 2192821, at *6 (M.D. Fla. Feb. 2, 2012) (applying this standard to a § 1681s-2(b) claim on a motion to dismiss).

Moreover, it is apparent that "what is a reasonable investigation by a furnisher may vary depending on the circumstances," that reasonableness is judged by an "objective standard," and that "the burden of showing the investigation was unreasonable is on the plaintiff." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010).   To prevail, a plaintiff must also demonstrate that the result of the investigation was actually inaccurate. *Id.* at 37.

As recently summarized by the Eastern District of Virginia in *Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 605 (E.D. Va. 2012):

> [Courts] must assess the reasonableness of . . . an information furnisher's investigation in light of what it learned about the dispute from the CRA.
>
> . . .
>
> A furnisher is not required to uncover and correct all inaccuracies on the consumer's credit report. Rather, a furnisher is required to correct only those inaccuracies it discovers during its reasonable investigation. Accordingly, a furnisher cannot be held liable for failing to correct those inaccuracies its reasonable investigation fails to uncover.

In this case, BOA has more than amply demonstrated that it conducted a reasonable investigation, that the result of that investigation provided no reason to reach any conclusion other than that the disputed account belonged to Stroud, and that it accurately reported the results of the investigation.  For his part, Stroud has failed to provide any *evidence*, as opposed to merely his own allegations or hunches or theories, that the investigation was unreasonable or that BOA reported any inaccurate information.  BOA is therefore entitled to summary judgment.

8

BOA reports that between May 2008 and July 2011, it received nine disputes from credit reporting agencies regarding Stroud's account.  [ECF No. 80-2, pp. 1-2].  The precise wording of these disputes varied, but generally the notifications from the credit reporting agencies stated that Stroud believed the account was "[n]ot his/hers . . . [p]rovide or confirm ID" or that Stroud believed his credit report contained "inaccurate information" or that he was the victim of identity theft.  [*Id.* at p. 2].

BOA Assistant Vice President and Operations Team Manager for Credit Bureau Disputes, Margaret Jane Getty, submitted a declaration stating that for the majority of the disputes, the Bank investigated whether the account was Stroud's by confirming that the personal information for the account that Stroud listed in the disputes matched the information in FIA's records for the account.  As to one particular complaint made in July 2009 alleging identity theft, Getty affirmed that BOA rejected that claim because of the results of its March 2009 investigation of a complaint received from the Office of the Comptroller of the Currency ("OCC"). The investigation of the OCC complaint and the results will be described more fully below.

BOA Operations Consultant for US Card Litigation Support, George Driver IV, also submitted a declaration.  [ECF No. 80-1].  Driver reports that he was responsible for reviewing the March 2009 OCC complaint.  Driver researched the relevant account and discovered that BOA's records indicated Stroud opened it on June 12, 1994.  Among

other material observations, Driver states that in 2009 he concluded the account

belonged to Stroud because:

> (1) Driver's examination of BOA's records revealed that from at least January 11, 2002 through September 2005, billing statements for the disputed account were mailed to Stroud's address as listed on the OCC complaint and that these statements were not returned as undeliverable by the Postal Service;

> (2) Stroud made no fewer than 34 monthly payments on the account during the same period;

> (3) Driver obtained a copy of one of the checks used to make these monthly payments, it was made from the Postal Workers Credit Union, and contained the OCC complaint address listed for Stroud.

[*Id.* at pp. 3-5].   Driver attached copies of the statements and the check to his

declaration.

Driver states that he also conducted another investigation regarding the disputed

account when Stroud filed this lawsuit in 2011.   During this investigation, Driver

reports that he found additional evidence that the account belonged to Stroud — such

as more bank statements sent to Stroud's address, additional copies of checks, and

records of communications between BOA and Stroud regarding the account.   Moreover,

Driver attached copies of this evidence to his declaration.   [*Id.* at pp. 5-7].

Considered in isolation, BOA's submissions demonstrate that its response to

Stroud's various disputes constituted a reasonable investigation under the FCRA, that

this investigation yielded no indication that the account did not belong to Stroud, and

that BOA accurately reported its findings.   *See also, e.g., Howard v. Pinnacle Credit Servs.,*

*LLC*, No. 4:09-CV-85 (CDL), 2010 WL 2600753, at *2-3 (M.D. Ga. June 24, 2012) (analyzing similar disputes received from a credit agency, describing a similar response, and granting summary judgment to furnisher of information on § 1681s-2(b) claim). Therefore, to avoid summary judgment, Stroud must demonstrate that there is other evidence demonstrating that a genuine issue of material fact exists.

Stroud submitted an affidavit, two written responses, and two appendices with attached exhibits in response.  [ECF Nos. 96; 106; 128; 129; 132; 133].  After reviewing Stroud's submissions, the Court concludes that they are not sufficient to defeat summary judgment in BOA's favor on Stroud's § 1681s-2(b) claim because Stroud produced no evidence to support this claim other than his own allegations.[6]

For example, Stroud contends that he never received any of the account statements bearing his address that BOA attached to Driver's affidavit.  [ECF No. 96]. This allegation, however, is conclusory and unpersuasive.  The issue is whether BOA conducted a reasonable investigation.  Stroud offers no evidence contradicting Driver's affidavit testimony that BOA's records indicate that BOA sent the statements to Stroud at Stroud's address.  Even if somehow none of the statements actually made it to Stroud, if there is nothing in BOA's records evidencing this claimed procedural failure, then this fact does not mean it was unreasonable for BOA to have concluded that

---

[6]     Sometimes it is difficult to discern whether some of Stroud's points in opposition are independent arguments or are components of larger arguments.  In that regard, the Court notes that it has carefully reviewed Stroud's submissions and thoroughly considered all points he made in his filings.

Stroud received the statements.   Moreover, Stroud's argument also misses the mark because his purported non-receipt of the statements would only indicate that he did not receive the statements — not that the account did not belong to him.[7]

Stroud's other points are either not relevant, incorrect, or unsupported by any competent admissible evidence.  For example, Stroud contends, "Defendant Bank of America/FIA only proffered internal records from 2006 forward and nothing prior to 2006 with any authenticated documentation."   [ECF No. 132, p. 8].[8]   But this is undisputedly not true.  BOA attached account statements going back to the year 2002 to Driver's affidavit.  [*E.g.*, ECF No. 80-1, p. 8].

Stroud also appears to contend that many of BOA's records are inaccurate, inconsistent, unauthenticated, or simply fraudulent.  [*See generally* ECF No. 132].  As to the alleged inaccuracies and inconsistencies, Stroud offers no authority standing for the proposition that BOA was required to examine every entry in its records for any inconsistency and, more importantly, does not explain why these entries demonstrate

---

[7]     The Court notes that, at his deposition, Stroud stated that in approximately August 2005 he moved to 20760 NE 4th Court, Apartment 204, Miami, Florida 33179 and that before then for at least fifteen years he resided at 16510 NW 21st Avenue, Opa Locka, Florida 33054.  [ECF No. 80-3, pp. 2-7].  These dates and addresses are consistent with the dates and addresses on the account statements and checks attached to Driver's declaration.  [*See* ECF No. 80-1, pp. 3, 5 and attached referenced exhibits].

[8]     This statement seemingly contradicts Stroud's other discussions of pre-2006 documentation.  [*See, e.g.*, ECF No. 96, p. 5].  It appears that the real thrust of Stroud's argument is that BOA cannot *authenticate* such documents because it is a post-merger entity and the entity who created the records no longer exists.  But the Court already rejected this position in its order denying Stroud's motions in limine.  [ECF No. 143].

that the account did not belong to him (or at a minimum, why it would be reasonable to conclude that the account did not belong to him based on these alleged inaccuracies in the face of the seemingly large amount of straightforward evidence that the account did belong to him).   As to authentication, the Court already explained why Stroud's analysis is misplaced in its order denying Stroud's motions in limine.  [ECF No. 143]. Finally, the Court notes that Stroud points to no evidence supporting his hypothesis that the records are fraudulent or that a BOA employee stole his identity.

Stroud's remaining argument appears to be that it was unreasonable for BOA to rely on the e-OSCAR system for transmission of disputes from the credit reporting agencies. [ECF No. 128, p. 10].  This argument also fails.  Stroud cites no authority holding that use of the e-OSCAR system is inappropriate or that BOA had any obligation to solicit additional information.  Instead, the rule is that if a credit reporting agency relays an insufficient dispute description to an information furnisher, then an individual may instead simply have a cause of action against the credit reporting agency.  *Chiang*, 595 F.3d at 38; *see also Van Veen*, 844 F. Supp. 2d at 605 (noting that courts must examine the reasonableness of an investigation based upon the description of the dispute provided by the credit reporting agency).   Moreover, under the circumstances of this case it does not appear to have made a difference, as BOA's records overwhelmingly indicated that the account belonged to Stroud and it is unclear

how the investigation's result would have been any different if BOA had received any additional information with regard to the disputes.

In sum, the Undersigned concludes that the only material evidence — as opposed to conclusory allegations and self-serving hunches — is that BOA conducted a reasonable investigation under the circumstances and that this investigation resulted in a reasonable conclusion that the disputed account belonged to Stroud.[9]  The Court therefore grants BOA summary judgment on this claim.

Stroud's second claim against BOA is under the Florida common law for defamation for providing inaccurate information to credit reporting agencies.  Under the FCRA's preemption provision:

> [W]here a company furnishes credit information about a consumer to a credit reporting agency pursuant to the Fair Credit Reporting Act, the company furnishing the information is **protected** from state law defamation and invasion of privacy claims **unless** the information it provided was both **false** and also given with the **malicious or willful intent** to damage the consumer.

*Lofton-Taylor v. Verizon Wireless*, 262 F. App'x 999, 1002 (11th Cir. 2008) (emphasis added) (citing 15 U.S.C. § 1681h(e)).   Consistent with this preemption, Stroud's defamation claim must fail because he has submitted no evidence that the information was inaccurate or that BOA acted with malice or willful intent.  *Bermudez v. Equifax Info.*

---

[9]      Given this conclusion, the Court finds it unnecessary to make the further conclusion urged by BOA — that the account actually belongs to Stroud.   The Undersigned will note, however, that Stroud failed to produce any credible evidence that the account does not belong to him.

*Servs., LLC*, No. 07-cv-1492-Orl-31GJK, 2008 WL 5235161, at *4 (M.D. Fla. Dec. 15, 2008);

*see also Schaffhausen v. Bank of Am., N.A.*, 393 F. Supp. 2d 853, 860 (D. Minn. 2005)

(granting defendants' summary judgment motions because plaintiff "has not presented

sufficient evidence to suggest that BOA's actions were malicious or made in an attempt

to injure" plaintiff); *Kronstedt v. Equifax, CSC*, No. 01-C-0052-C, 2001 WL 34124783 (W.D.

Wis. Jan. 28, 2002) (noting that courts which have construed the preemption provision

regarding the meaning of "malice or willful intent" have applied definitions used in

libel law, observing that a statement is made with malice if it is made with knowledge

of falsity or reckless disregard for the truth and holding that plaintiff's defamation

claim must fail because the court already found plaintiff failed to adduce sufficient

evidence of willfulness to survive defendant bank's summary judgment motion on

punitive damages).   BOA is therefore entitled to summary judgment on Stroud's

defamation claim.

### b.  CACH

As with BOA, Stroud's only FCRA claim against CACH is that CACH failed to

conduct a reasonable investigation pursuant to 15 U.S.C. § 1681s-2(b) of the FCRA and,

as a result, reported inaccurate information.  As noted above, to prevail on this claim,

Stroud would need to demonstrate that CACH failed to conduct a reasonable

investigation and/or failed to report the investigation results accurately and to make

any warranted modifications to its reporting regarding Stroud.

The Court concludes that CACH has more than amply demonstrated that it conducted a reasonable investigation, that the result of that investigation provided no reason to reach any conclusion other than that the disputed account belonged to Stroud, and that it accurately reported the results of the investigation.  For his part, Stroud has failed to provide any rebuttal evidence, as opposed merely to his allegations, that the investigation was unreasonable or that CACH ever reported any inaccurate information.  CACH is therefore entitled to summary judgment.

CACH presented the following evidence-supported material facts in support of its summary judgment motion:[10]

(1) In March 2007, CACH purchased Stroud's account and debt from BOA.  [ECF No. 83-1, p. 1].

(2) The affidavit of sale that BOA initially provided to CACH for the debt listed only the "charge off" account number ending in 2374 [ECF No. 89, p. 8], but CACH later obtained a second affidavit of sale clarifying that the original account number ended in 7332 [*Id.* at p. 9] (the number on the BOA statements also in CACH's records).

(3) From at least 1990 to approximately August or September 2005, Stroud resided at 16510 NW 21st Avenue, Opa Locka, Florida 33054.  [ECF No. 84-4, p. 1].

(4) CACH has in its records a number of BOA credit card statements mailed to Stroud at the 16510 NW 21st Avenue address (and, the Court also notes, a number of later statements mailed to the other address which Stroud claimed he moved to during the same deposition).  [ECF Nos. 80-3, p. 2; 83-2].

---

[10]    Many of these facts are taken from the detailed affidavit of Jay Mills, CACH's authorized agent, and the documents attached to his affidavit.  [ECF No. 89].

(5) In January 2008, before it received any disputes regarding Stroud's account, CACH filed a lawsuit against Stroud to collect the debt. Stroud testified during his deposition that he signed a stipulation agreeing to pay the debt and, in fact, proceeded to make approximately 7 or 8 payments pursuant to the stipulation. [ECF No. 84, pp. 21-23].

(6) Sometime after the stipulation was signed, both sides realized that the first affidavit of sale account number did not match the number on the BOA statements. CACH therefore returned Stroud's payments, dismissed the lawsuit so that it could investigate, and deleted the information regarding the debt from the information it provided to credit reporting agencies. [ECF No. 89, p. 4].

(7) On three occasions — in mid to late January 2010, in early May 2010, and in mid to late May 2010 — CACH received disputes from credit reporting agencies regarding the BOA account and responded to each dispute. [ECF No. 89, pp. 4-5].

   a. The first dispute was relayed by the credit reporting agency only as account "not his/hers" and in response CACH verified in its records Stroud's name, social security number, date of birth, address, and other identifying information.

   b. The second dispute was relayed as account "not his/hers," contained the comment that the collection matter was "dismissed," and requested confirmation of the debtor's identification and the account. CACH provided a response identical to the first except that it also confirmed the collection matter was dismissed.

   c. The third dispute relayed that Stroud claimed CACH was reporting "inaccurate information" and requested confirmation of the debtor and account identification information. CACH deleted the account from its reporting pending receipt of the second affidavit of sale in response.

Stroud filed a written opposition memorandum, an affidavit and an appendix with attached exhibits in response. [ECF Nos. 95; 100; 101].

In his affidavit, Stroud states his *belief* that CACH (1) does not own the disputed account, (2) has no authority to collect it, and (3) has never presented any valid evidence of ownership. [These arguments appear, at least in part, to be an extension of the arguments the Court rejected in its order denying Stroud's motions in limine regarding the corporate merger].[11]  [ECF No. 95].

But Stroud does not support these *beliefs* by reference to any actual, competent evidence.  CACH, in contrast, has presented competent, admissible evidence of its current ownership of the debt in the form of the affidavits of sale.  Finally, even if it turned out that the debt did not belong to CACH or the disputed account did not actually belong to Stroud,[12] the affidavit submitted by Stroud fails to explain why CACH could not have reasonably relied on its records, which were provided by a third-party, when it originally reported the account or when it responded to Stroud's later disputes.

In his written memorandum, Stroud primarily appears to raise various complaints over the documentation CACH filed in the state court debt collection action

---

[11]    Stroud also raises for the first time in his affidavit and response an argument regarding CACH's alleged failure to provide a notice of debt assignment pursuant to § 559.715, Fla. Stat.  [ECF No. 95, p. 4].  The Court will not consider this new theory of liability because Stroud raised it improperly for the first time in response to a summary judgment motion.  *Brown v. Gulf Coast Jewish Family Servs., Inc.*, No. 8:10–cv–1749–T–27AEP, 2011 WL 3957771, at *9 (M.D. Fla. Aug. 9, 2011).

[12]    Of course, Stroud has presented no competent evidence that the affidavits of sale are in fact inaccurate or that the account does not belong to him.

and to dispute the veracity of the BOA affidavits of sale and Mills' affidavit.  [ECF No. 100].  But Stroud does not appear to offer any competent evidence supporting his contentions that CACH ever willfully or negligently furnished any inaccurate information to a credit reporting agency, or that CACH did not conduct a reasonable investigation in response to his disputes or that it did so but did not then provide accurate results (either willfully or negligently).

Stroud's primary, on-point argument in his memorandum appears to be that CACH (1) willfully or negligently did not conduct a reasonable investigation of his account disputes because it used the e-OSCAR system, and (2) negligently or willfully reported the account in the first place because it lacked sufficient information to verify the debt.

The Court rejects these arguments.  The only evidence before the Court establishes that CACH performed a reasonable investigation based upon the information provided to it by the credit reporting agency and that the information CACH reported was correct.

In response to the credit reporting agency disputes, CACH reviewed its files and then, after discovering that the first affidavit of sale did not appear to contain the correct account number, deleted the account from the information it furnished to credit reporting agencies.  This was reasonable under the circumstances.  *See, e.g., Howard v. Pinnacle Credit Servs., LLC*, No. 4:09-CV-85 (CDL), 2010 WL 2600753, at *2-3 (M.D. Ga.

June 24, 2012) (analyzing similar disputes received from a credit agency, describing a similar response, and granting summary judgment to furnisher of information on § 1681s-2(b) claim).

Most importantly, Stroud has failed to produce any evidence that CACH ever actually — either before or after Stroud filed the disputes — furnished inaccurate information to any credit reporting agency.  Stroud may disagree with this conclusion and *believe* otherwise, but he has not produced any *evidence* to support his disagreement and beliefs.  CACH is therefore entitled to summary judgment on this claim.

Stroud's second claim against CACH is raised under the Florida common law for defamation.  As discussed above with regards to BOA, the Court concludes that his claim is preempted by the FCRA because Stroud presented no evidence to rebut CACH's evidence that the information reported was not accurate and failed to present evidence of malice or willful intent.  The Court therefore also grants CACH summary judgment on this claim.[13]

---

[13]   The Court notes that, in its summary judgment motion discussion regarding preemption, CACH provides a detailed analysis of two different FCRA preemption provisions.  [ECF No. 83, pp. 12-15].  However, the Court does not find it necessary to analyze the implications of 15 U.S.C. § 1681t(b)(1)(F) because it is clear that, at a minimum, the more defamation-specific preemption provision in 15 U.S.C. § 1681h(e) applies.  *Bermudez v. Equifax Info. Servs., LLC*, No. 07-cv-1492-Orl-31GJK, 2008 WL 5235161, at *4 (M.D. Fla. Dec. 15, 2008).

c.   EXPERIAN

Stroud bases his claims against Experian on 15 U.S.C.  §§ 1681i, 1681h(e), 1681g, and Florida defamation law.  § 1681i provides the procedures a credit reporting agency such as Experian must follow when a consumer disputes the accuracy of information contained in the consumer's file.  *Jackson v. Ocwen Loan Servicing, LLC*, No. 11–Civ–60560, 2011 WL 4345449, at *3 (S.D. Fla. Sept. 16, 2011).  § 1681h(e) provides in relevant part that "no consumer may bring any action or proceeding in the nature of defamation . . . against [any credit reporting agency] except as to false information furnished with malice or willful intent to injure such consumer."[14]  § 1681g in relevant part requires a credit reporting agency to provide a consumer a copy of his credit report upon request.  *See Lee v. Sec. Check, LLC*, No. 3:09–cv–421–J–12TEM, 2010 WL 3075673, at *5 (M.D. Fla. Aug. 5, 2010).

An action under the FCRA must be brought "not later than the earlier of--(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such

---

[14]    Stroud does not provide detailed allegations regarding this claim in his complaint.   Experian correctly explains, however, that at his deposition Stroud described the basis for this claim as Experian's alleged failure to provide Stroud with a copy of his credit report upon Stroud's request in March 2008.  [ECF Nos. 81, p. 9; 82-2, p. 26].

The Court also notes that in his response to Experian's summary judgment motion, Stroud appears to make arguments regarding 15 U.S.C. § 1681c.  However, and as noted above in footnote 4 to this order, while Stroud references this statutory provision in his claims against Trans Union, he does not in his allegations against Experian.  The Court will not consider this claim because Stroud raises it for the first time in his response.  *Supra* n.11.

liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs."  15 U.S.C. § 1681p; *see also Grinke v. Countrywide Home Loans, Inc.*, No. 08-23383-CIV, 2009 WL 2588746, at *1 n.6 (S.D. Fla. Aug. 24, 2009) (describing the statute of limitations).  Under § 95.11(4)(g), a defamation action brought under Florida common law must be brought within two-years of publication.

Stroud filed his lawsuit on July 12, 2011.  [ECF No. 1].  Experian contends that Stroud's claims under 15 U.S.C. § 1681h(e) and Florida defamation law are therefore barred by the statute of limitations because he filed this lawsuit more than three years after he discovered the statute was being violated.  Specifically, Experian argues that the claim under § 1681h(e) and Florida defamation law accrued at least as early as June 7, 2008, when Stroud was denied credit for a laptop purchase based upon an Experian credit report.  [ECF No. 81, p. 4; *see also* ECF No. 82-28 (the denial letter)].  Experian further argues that Stroud's claim under 15 U.S.C. § 1681i accrued at least as early as June 2008, when Stroud received notification from Experian that it would not remove the BOA account from his credit report.  [ECF No. 81, pp. 4-5].

In response, Stroud makes only two arguments.  First, he argues that his claims under 15 U.S.C. §§ 1681i & 1681h(e) did not begin to run until he "discovered" — through the formal discovery materials produced to him by Defendants after he filed his lawsuit — documentation substantiating his suspicions that Experian violated these provisions of the FCRA.  [ECF No. 102, p. 3].  Stroud does not describe any FCRA

violations that he believes occurred within the limitations period.  Second, he argues that his defamation claim "is based on Defendant providing false and inaccurate information in his credit file and disclosing it to GE CAPITAL [sic] when it requested his file on September 8, 2009."  [*Id.* at p. 4].

Stroud's arguments regarding the statute of limitations as to his § 1681i claim are unpersuasive.  The record is clear that he was aware of the FCRA and his right to sue under that act at least as early as June 2008, when he was denied credit for a laptop computer based upon an Experian credit report and when Experian denied his request to remove the account from his credit report that same month.  At his deposition, Stroud acknowledged that as of March 2008 he had read the FCRA and was aware that, if he disputed an account with Experian but Experian refused to remove it, then he could sue Experian under the FCRA.  [ECF No. 82-2, p. 11].

Stroud's argument to the contrary appears to be based upon a fundamental misunderstanding of the statute of limitations.  Stroud contends that "discovery" as used in the statute of limitations refers to the formal process of discovery in the lawsuit. In other words, Stroud appears to believe that the statute of limitations merely requires him to litigate his claims to completion within two years of *receiving* discovery materials that he believes prove his claim.[15]  The Court understands that Stroud is proceeding *pro*

---

[15]     Stroud argues, for instance, that because he is not an Experian employee he would not have access to their procedures for handling his dispute until formal discovery commenced.  [ECF No. 102, p. 4].

*se* and therefore may be entirely sincere in this misapprehension.  It is nonetheless still a misapprehension.

A statute of limitations <u>limits</u> the time for bringing a civil lawsuit based on the date when the claim accrued, which, in this case, is the date Stroud discovered — meaning *realized* — that he had reasonable grounds to believe he had a cause of action. BLACK'S LAW DICTIONARY 1451 (8th ed. 2004); *see also Cintron-Luna v. Roman-Bultron*, 668 F. Supp. 2d 315, 320 (D. Puerto Rico 2009) (holding that FCRA statute of limitations begins to run when a consumer discovers the facts giving rise to his claims).

Litigants rarely have all the evidence necessary to prove their claim when they file a lawsuit but they must file the lawsuit anyway based on less-than-perfectly confirmed allegations or risk waiving their right to do so.  Indeed, the Federal Rules of Civil Procedure only require that a lawyer representing a plaintiff have a "belief" that a lawsuit has an evidentiary basis or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3). In any event, Stroud's interpretation of the statute of limitations is incorrect and contrary to his admission that he was prompted to file this lawsuit because he believed that if he waited any longer "the statute of limitations would be up **before I filed,** so I thought I probably have to do it now."  [ECF No. 82-2, p. 20 (emphasis added)].

The Court therefore grants Experian summary judgment on statute of limitations grounds as to Stroud's § 1681i claim.

However, the Undersigned concludes that Stroud's defamation claim as to the September 8, 2009 report issued to GE Capital is <u>not</u> barred by the statute of limitations. Experian's reliance on the "single publication" rule is misplaced. When applying and interpreting Florida law, this Court is bound by Florida Supreme Court precedent or, if that does not exist, the "decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983). This Court is not aware of a binding Florida Supreme Court opinion and the parties cite to no authority on this particular issue. However, in *Musto v. Bell South Telecommunications Corp.*, 748 So. 2d 296 (Fla. 4th DCA 1999), the court held that each issuance of a credit report constitutes a separate instance for purposes of the statute of limitations found at § 95.11(4)(g) and therefore the single publication rule does not apply.[16]

---

[16]     The *Musto* court was ruling on the statute of limitations with regard to another claim to which this statute of limitations also applies – credit slander – but analogized to the FCRA in reaching its holding. The Undersigned concludes that the holding in *Musto* may be construed fairly as being one relating to the statute of limitations itself and not merely to credit slander claims. In *Pierson v. Werntz*, No. 6:08-cv-466-Orl-28GJK, 2010 WL 1408391, at *12 (M.D. Fla. Apr. 6, 2010), the district court declined to extend *Musto* to a defamation claim regarding a National Practitioner Data Bank report on a physician. However, *Pierson* is distinguishable because the report at issue in that case appears to have been a static report of which identical copies were disseminated multiple times. Experian has not argued, let alone established with competent evidence, that Stroud's credit report was identical each time it was issued over a multi-year period, and the Court cannot simply assume as much.

Nevertheless, the Undersigned will still grant Experian summary judgment on the defamation claim because it is preempted under § 1681h(e).  As outlined above in regard to defamation claims against other defendants, to avoid preemption of a common law claim "in the nature of defamation, invasion of privacy, or negligence," a consumer must base the claim on "false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e);[17] *Bermudez*, 2008 WL 5235161, at *4 (finding that defamation claim premised on failure to comply with the FCRA was preempted because the plaintiff lacked evidence of malice or willful intent).  Stroud has failed to present competent evidence of the requisite malice or willful intent.  *See also Schaffhausen*, 393 F. Supp. 2d at 860; *Kronstedt*, 2001 WL 34124783, at *21.

Consequently, Stroud's only remaining claim against Experian is for failing to provide a credit report upon request pursuant to § 1681g.  In his complaint, Stroud does

---

[17]    § 1681h(e) does not create a federal cause of action for defamation.  Instead, it merely limits a consumer's ability to bring a state law defamation claim to instances where a defendant acted willfully or maliciously in providing false information pursuant to the FCRA.  *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45 (2d Cir. 2011).  This leaves as Stroud's only remaining FCRA claim his § 1681g claim that Experian failed to provide him with a credit report upon request.  But Stroud cites to no authority allowing a failure to provide a credit report to serve as the predicate act for avoiding preemption under § 1681h(e).  Such an approach would appear to be incorrect because § 1681h(e) discusses the "furnishing" of "false" information – as opposed to a refusal to provide any information at all.  In addition, it appears that Stroud himself has already acknowledged that his § 1681g claim does not form the basis of his § 1681h(e)/defamation claim.  [ECF No. 82-2, p. 20].  But even assuming that a § 1681g violation could be sufficient and that Stroud is relying on it, the alleged § 1681g violation could not serve as the predicate act in this case because the Undersigned is granting summary judgment on that claim as well.

not specifically allege the grounds giving rise to this claim.  Nonetheless, Experian cited

to Stroud's deposition transcript, where Stroud explained the following relevant details

about this claim:

> (1)     On March 8, 2011, Stroud logged onto Experian's website and ordered his Vantage Score and a free credit report.  Stroud acknowledges that he received both as requested the same day.  [ECF No. 82-2, p. 22].

> (2)     Sometime before March 24, 2011, Stroud claims that he ordered a second credit report online from Experian but that Experian did not provide the second report.  Stroud cannot recall why he wanted a second report so soon after receiving the first, especially since he would have been required to pay for the second, but contends nonetheless that he placed the order.  [*Id.*].

> (3)     Stroud contends that this second request is the basis of his claim under § 1681g.  He believes the existence of his second request and denial is evidenced by a letter he received from Experian dated March 24, 2011. This letter provided: "Dear Pascal A. Stroud, we were unable to honor your recent request because you did not provide sufficient identification information for us to verify your identity."  [*Id.* at pp. 22-23].

> (4)     Stroud admitted that on or about March 11, 2011, he sent a dispute to Experian regarding the BOA account that gave rise to the events underlying this lawsuit.  [*Id.* at p. 23].

> (5)     Stroud admitted that he did not include his full Social Security number or a copy of his identification in his March 11, 2011 dispute letter. [*Id.*].

> (6)     Nonetheless, despite the similarities between the omissions in his request and the March 24, 2011 letter from Experian, Stroud contends that this letter was *not* in response to his March 11, 2011 dispute but, rather, in response to his denied second request for a credit report.  Stroud stated that one reason he knew this was true was that he received a return receipt card from the Post Office indicating that Experian received his March 11 2011 dispute letter on March 27, 2011, three days after he received Experian's letter.  [*Id.*].

Experian also attached a declaration from Teresa Iwanski, a Senior Legal and Compliance Specialist in the National Consumer Assistance Center of Experian Information Solutions, Inc.  [ECF No. 82-10, pp. 6-7].  Ms. Iwanski confirmed that Experian's records demonstrate that Stroud sent a dispute letter to Experian on March 11, 2011 regarding the BOA account but that his dispute letter did not contain sufficient information for Experian to process the dispute.  She also confirmed that Experian sent Stroud a letter on March 24, 2011 in response to Stroud's March 11, 2011 dispute that advised Stroud he needed to submit proper identification to allow them to process the dispute.  Finally, Ms. Iwanski confirmed that, according to Experian's records, Experian "did not receive any other requests from Plaintiff for his credit report between March 8, 2011 and the filing of this lawsuit."  [*Id.* at p. 7].

Experian contends that, based on Stroud's deposition testimony and Ms. Iwanski's declaration, the only reasonable conclusions are that Stroud never requested a second credit report, that the March 24, 2011 letter was in response to the March 11, 2011 dispute (not a second credit report request made approximately two weeks after he admittedly received a credit report), and that Experian therefore never denied him his credit report in violation of § 1681g.  [ECF No. 81, p. 10].

In response, Stroud insists for various reasons that the March 24, 2011 letter was not in response to his March 11, 2011 dispute letter.  However, these positions are little more than unsworn theories and, for the most part, Stroud points to no evidence to

support these unsworn allegations.  The one item of actual evidence to which Stroud points is a copy of an email he received from Experian thanking him for purchasing his Vantage Score on March 8, 2011.  [ECF No. 104, p. 6].  Stroud appears to contend that because this email does not also mention his free credit report, it demonstrates he did not order or receive a free credit report that day and instead ordered, but did not receive, a free credit report later that month.  [ECF No. 102, pp. 14-15].  However, Stroud's position is facially illogical, contrary to the other evidence submitted by Experian and is insufficient to generate an adequate opposition to summary judgment.

For one thing, Stroud's reliance on the email is problematic because, on its face, this email only confirms that Stroud ordered a Vantage Score that day.  Stroud offers no competent evidence explaining, for example, that the omission of any mention of a free credit report in the March 8, 2011 email indicates that Stroud did not also request a free credit score.  The unsworn suggestion that he did not order a free credit report that day also directly contradicts his sworn deposition testimony on this point.  Moreover, even if Stroud did not request a free credit report on March 8, 2011, this email offers no support for his position he did so at a later date in March 2011 and was denied the report at that time.

But most damaging to Stroud's opposition to summary judgment is that Stroud has offered no evidence to rebut Experian's evidence that its records (1) show he requested and received his free credit report on March 8, 2011 and (2) demonstrate that

Stroud made no further credit report requests with Experian between March 8, 2011 and the date he filed this lawsuit.  [ECF No. 82-10, p. 7].

A party cannot resist an amply supported summary judgment motion by simply repeating the evidence-free mantra that the movant's position is incorrect.  Stroud may subjectively and passionately believe that his hunch is correct, but hunches, regardless of how sincere they may be developed or how stridently they are repeated, are simply not evidence which a non-movant can rely upon to prevent the entry of summary judgment.

In sum, Stroud has failed to provide any evidence to support his allegations regarding this claim and has not rebutted the competent evidence provided by Experian.  The Undersigned therefore grants summary judgment to Experian on Stroud's § 1681g claim.

### d.  TRANS UNION

Stroud advances five theories against Trans Union. Stroud claimed Trans Union violated: (1) 15 U.S.C. § 1681i(a)(2)(A) by failing to provide all relevant details of Stroud's dispute to the furnisher of the disputed information and § 1681i(a)(5) by mishandling allegedly unverifiable information; (2) § 1681i(c) by failing to place a notice of the dispute in his credit report; (3) § 1681h(e) by defaming him by negligently or willfully including false information in his credit report; (4) § 1681g(a) by failing to

provide Stroud with a credit report upon his request; and (5) Florida defamation law by providing an inaccurate credit report.

In its summary judgment motion, Trans Union argued that it is entitled to summary judgment on *all* of Stroud's FCRA claims because, even assuming Trans Union violated the FCRA (which it denies), Stroud cannot demonstrate that he suffered any compensable **damages.**   [ECF No. 79].   Moreover, Trans Union pointed to competent evidence in the form of Stroud's own deposition testimony supporting the conclusions that: (1) Stroud has failed to provide a damages calculation and does not even know how much money he is seeking; (2) Stroud was never denied credit as a result of a Trans Union credit report; (3) Stroud does not plan to call any expert witnesses or present any documents regarding damages at trial; (4) Stroud has multiple preexisting medical conditions and a work history that are more obviously the cause of his alleged physical and emotional damages; and (5) his debt level involving admitted debts caused him stress.  [ECF No. 78-2, pp. 18-19, 24, 41, 44, 45].

Stroud did not respond substantively to Trans Union's damages argument.  His response instead contains only headings suggesting the arguments regarding damages which could or should be made, but underneath those headings are only blank spaces. [ECF No. 105, pp. 11-12].   In its reply, Trans Union urges the Court to accept its statement of material facts regarding damages as admitted and to grant summary judgment on all of Stroud's FCRA claims.  [ECF No. 111].

It is well-established that actual damages are an element of an FCRA claim and, if a consumer cannot present any evidence substantiating actual damages, then summary judgment must be granted to a credit reporting agency. *Nagle v. Experian Info. Solutions, Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) (noting that "failure to produce evidence of damage resulting from a FCRA violation mandates summary judgment."); *see also Jackson v. Equifax Info. Servs., LLC*, 167 F. App'x 144, 146 (11th Cir. 2006) (affirming district court's grant of summary judgment to a credit reporting agency on a § 1681i claim because "Jackson failed to produce any evidence indicating that he was damaged as a result of an allegedly inaccurate Equifax report."); *see also Enwonwu v. Trans Union*, 164 F. App'x 914, 918 (11th Cir. 2006) (affirming district court's grant of summary judgment on a § 1681e claim because "Enwonwu has not created a genuine issue of material fact that the inaccurate information reported by Trans Union caused him harm."); *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1262-63 (S.D. Fla. 2009).

Local Rule 56.1 provides that all material statements of fact made by the moving party will be deemed admitted unless the non-moving party denies them.  Similarly, Federal Rule of Civil Procedure 56(e) permits a district court to treat an unaddressed statement of fact as undisputed.  This Court's summary judgment instruction order cautioned Stroud of these consequences and provided him with additional time to file a revised or supplemental response to Trans Union's motion.  [ECF No. 127].  But Stroud

never took advantage of the additional time and did not submit any additional filing to supplement his response to Trans Union's summary judgment motion.

Therefore, the Court will deem as accepted Trans Union's statements that Stroud cannot prove he was damaged by inaccuracies (if any) in credit reports issued by Trans Union and will grant Trans Union summary judgment on all of Stroud's FCRA claims. *See, e.g., BMU, Inc. v. Cumulus Media, Inc.*, 366 F. App'x 47 (11th Cir. 2010); *Centennial Bank v. Noah Grp., LLC*, 755 F. Supp. 2d 1256, 1258 n.2 (S.D. Fla. 2010); *Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1245-46 (S.D. Fla. 2009) *aff'd,* 389 F. App'x 936 (11th Cir. 2010).[18]

The only remaining claim against Trans Union is Stroud's defamation claim.  The Court also grants summary judgment on this claim because Stroud has not submitted evidence to avoid preemption. In other words, he has not presented any competent evidence that Trans Union acted with malice or willful intent in providing false information.  15 U.S.C. § 1681h(e); *Bermudez,* 2008 WL 5235161; *see also Schaffhausen*, 393 F. Supp. 2d at 860; *Kronstedt,* 2001 WL 34124783, at *21.

---

[18]    The Court notes that Trans Union is also entitled to summary judgment on Stroud's claims under § 1681i(c) and § 1681g(a) because in his response Stroud conceded the former and did not address at all the latter.  [ECF No. 105, pp. 11-12].

## IV.    CONCLUSIONS

For the reasons above, the Undersigned **GRANTS** the Defendants' motions for summary judgment, **CANCELS** all pending deadlines and the trial, and **CLOSES** this case.[19]

**DONE AND ORDERED**, in Chambers, in Miami, Florida, this 13th day of August, 2012.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE


**<u>Copies furnished to</u>:**
Pascal A. Stroud, *pro se*
All counsel of record

---

[19]    Although Defendants are entitled to summary judgment on all of Stroud's claims, the Court compliments Stroud on his efforts, passion and energy and notes that Stroud displayed preparation and legal acumen far exceeding the average *pro se* litigant.